UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| JOSE TEIXEIRA, | ) | Case No.  5:25-cv-0574 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C O M P L A I N T |
| | ) | |
| COINBASE GLOBAL, INC. and | ) | |
| COINBASE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, by his counsel of record, states and alleges as follows:

1.     Plaintiff brings this Complaint against Defendants Coinbase Global, Inc. and Coinbase, Inc. ("Defendants") for their failure to properly secure and safeguard Plaintiff's protected personally identifiable information stored within Defendants' information network, including, without limitation, names, addresses, account data and government ID images (these types of information, *inter alia*, being thereafter referred to, collectively, as "personally identifiable information" or "PII").[1]

---

[1] Personally identifiable information ("PII") generally incorporates information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information.  2 C.F.R. § 200.79.  At a minimum, it includes all information that on its face expressly identifies an individual.  PII also is generally defined to include certain identifiers that do not on its face name an individual, but that are considered to be particularly sensitive and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers, etc.).

2.     By this action, Plaintiff seeks to hold Defendants responsible for the harms they caused Plaintiff in the massive and preventable cyberattack purportedly discovered by Defendants on May 11, 2025, in which cybercriminals bribed Coinbase overseas support agents to obtain PII and thus infiltrated Defendants' inadequately protected network servers and accessed highly sensitive PII that was being kept unprotected ("Data Breach").

3.     Defendants acquired, collected, and store Plaintiff's PII.  Therefore, at all relevant times, Defendants knew or should have known that Plaintiff would use Defendants' services to store and/or share sensitive data, including highly confidential PII.

4.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's PII, Defendants assumed legal and equitable duties to him.  These duties arise from state and federal statutes and regulations, and common law principles, as detailed below.

5.     Defendants disregarded the rights of Plaintiff by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiff's PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of data and failing to follow applicable, required and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use.

6.     As a result, Plaintiff's PII was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party seeking to

profit off this disclosure and did so profit to Plaintiff's extreme financial detriment by defrauding Plaintiff as described below.

7.     Furthermore, Plaintiff has a continuing and vital interest in ensuring that his information is and remains safe and is entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

8.     Plaintiff is a resident of Pennington County, State of South Dakota, and is a citizen of South Dakota.

9.     Defendants are incorporated under the laws of Delaware and have their chief executive office and principal place of business in New York City, New York and are therefore citizens of Delaware and New York.

10.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332 (diversity jurisdiction).  Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332; and the amount in controversy exceeds $75,000.

11.     Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

12.     Defendants routinely conduct business in South Dakota where this District is located, have sufficient minimum contacts in this State, have intentionally availed themselves of this jurisdiction by marketing and/or selling products and/or services and/or by accepting and processing payments for those products and/or services within this State.

13.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims took place within this District and Defendants do business in this Judicial District.

## FACTS COMMON TO ALL COUNTS

14.     Defendants are a multinational publicly traded company operating a cryptocurrency exchange that allows investors to buy, sell, and transfer over 250 cryptocurrencies.  Founded in 2012, Coinbase is the largest cryptocurrency exchange in the United States regarding trading volume, with over 8.4 million monthly transacting users worldwide, 245,000 ecosystem partners, and reported revenue of $6.3 billion in 2024.

15.     The true names and capacities of persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Plaintiff.  Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of such responsible parties when their identifies become known.

16.     Plaintiff opened his Coinbase account in July 2022 under the name Jose M. Teixeira using his email address and cell phone number.  Plaintiff followed all security instructions, including enabling the security prompt for phone notifications and setting up Google Authenticator.

17.     In early 2025, Plaintiff began receiving multiple text messages with verification codes from Coinbase that Plaintiff had not requested.

18.     Concerned about these messages, Plaintiff contacted Coinbase by email. Coinbase replied on July 7, 2025 at 4:05 pm, assigned Plaintiff Ticket #843242 and purported to connect Plaintiff with Agent Naomi Wilson from the Fraud and Asset Protection Department [see attached Exhibit A].

19.     Plaintiff later replied to Coinbase, but Plaintiff never received a response from Coinbase.  Over two months went by with silence from Coinbase, it appearing nearly impossible to connect with a real person at Coinbase.

20.     In August and September 2025, Plaintiff was repeatedly prompted (purportedly by Google) to change his gmail password, which seemed unusual.

21.     On September 10, 2025, Plaintiff received a phone call (purportedly from Google) providing Plaintiff with a temporary password (T3mp0422!) and instructing Plaintiff not to change it for 72 hours.

22.     Without any response or assistance from Coinbase, despite Exhibit A, Plaintiff followed those instructions, but later realizing that it was all a scam.  With assistance of Plaintiff's son, Plaintiff locked his Coinbase account, changed his gmail password and updated his Google backup codes.

23.     On September 11, 2025, Coinbase Support emailed Plaintiff with recommendations to change his password and enable two-factor authentication—steps Plaintiff had taken long before that.

24.     Around the same time (September 11), Plaintiff received multiple calls from (828) 829-1445, from someone identifying himself as "Elliot" from Coinbase.  This

person reassured Plaintiff that his funds were secure in a Coinbase hot wallet and had not left his account.

25.    After great difficulty reaching Coinbase, Plaintiff eventually spoke to a support representative who referred Plaintiff to Cybera, the security company that handles fraud cases for Coinbase.  Initially, Coinbase/Cybera informed Plaintiff that his loss was about $289,000.

26.    After Plaintiff formally requested reimbursement, Coinbase later claimed that his account had been accessed from an IP address in Los Angeles, CA (146.174.39.xx) and that his actual loss was approximately $400,000.

27.    Coinbase denied the request for reimbursement, falsely claiming that the loss was Plaintiff's own fault.

## CAUSES OF ACTION

## COUNT ONE

28.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

29.    At all times herein relevant, Defendants owed Plaintiff a duty of care, *inter alia*, to act with reasonable care to secure and safeguard his PII and to use commercially reasonable methods to do so.  Defendants took on this obligation upon accepting and storing Plaintiff's PII on its computer systems and networks.

30.    Among these duties, Defendants were expected:

    (a)    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the PII in its possession;

6

(b)    to protect Plaintiff's PII using reasonable and adequate security procedures and systems that are/are compliant with industry-standard practices;

(c)    to implement processes to detect the Data Breach quickly and to act on warnings about data breaches timely; and

(d)    to promptly notify Plaintiff of any data breach, security incident or intrusion that affected or may have affected his PII.

31.    Defendants knew or should have known that the PII was private and confidential and should be protected as private and confidential and, thus, Defendants owed a duty of care to not subject Plaintiff to an unreasonable risk of harm because he was a foreseeable and probable victim of any inadequate security practices.

32.    Defendants knew or should have known of the risks inherent in collecting and storing PII, the vulnerabilities of its data security systems and the importance of adequate security.  Defendants knew or should have known about numerous well-publicized data breaches.

33.    Defendants knew or should have known that its data systems and networks did not adequately safeguard Plaintiff's PII.

34.    Only Defendants were in the position to ensure that its systems and protocols were sufficient to protect the PII that Plaintiff had entrusted to them.

35.    Defendants breached their duties to Plaintiff by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard his PII.

7

36. Because Defendants knew that a breach of their systems could damage numerous individuals, including Plaintiff, Defendants had a duty to adequately protect their data systems and the PII stored thereon.

37. Plaintiff's willingness to entrust Defendants with his PII was predicated on the understanding that Defendants would take adequate security precautions. Moreover, only Defendants could protect their systems and the PII stored on them from attack. Thus, Defendants had a special relationship with Plaintiff.

38. Defendants also had independent duties under state and federal laws that required Defendants to reasonably safeguard Plaintiff's PII and promptly notify him about the Data Breach. These "independent duties" are untethered to any contract between Defendant and Plaintiff.

39. Defendants breached their general duty of care to Plaintiff in, but not necessarily limited to, the following ways:

(a) by failing to provide fair, reasonable and/or adequate computer systems and data security practices to safeguard Plaintiff's PII;

(b) by failing to timely and accurately disclose that Plaintiff's PII had been improperly acquired or accessed;

(c) by failing to adequately protect and safeguard PII by knowingly disregarding standard information security principles, despite obvious risks and by allowing unmonitored and unrestricted access to unsecured PII;

(d) by failing to provide adequate supervision and oversight of the PII with which they were and are entrusted, in spite of the known risk and foreseeable

8

likelihood of breach and misuse, which permitted an unknown third party to gather

Plaintiff's PII, misuse the PII and intentionally disclose it to others without consent;

       (e)    by failing to adequately train their employees not to store more PII

than absolutely necessary;

       (f)    by failing to consistently enforce security policies aimed at

protecting Plaintiff's PII;

       (g)    by failing to implement processes to quickly detect data breaches,

security incidents or intrusions; and

       (h)    by failing to encrypt Plaintiff's PII and monitor user behavior and

activity in order to identify possible threats.

40.    Defendants' willful failure to abide by these duties was wrongful, reckless

and/or grossly negligent in light of the foreseeable risks and known threats.

41.    As a proximate and foreseeable result of Defendants' grossly negligent

conduct, Plaintiff has suffered damages and is at imminent risk of additional harm and

damages (as alleged above).

42.    The law further imposes an affirmative duty on Defendants to timely

disclose the unauthorized access and theft of the PII to Plaintiff so that he could and/or

still can take appropriate measures to mitigate damages, protect against adverse

consequences, and thwart future misuse of his PII.

43.    Defendants breached their duty to notify Plaintiff of the unauthorized

access by failing and continuing to fail to provide Plaintiff sufficient information

regarding the breach.  To date, Defendants have not provided sufficient information to

Plaintiff regarding the extent of the unauthorized access and continue to breach their disclosure obligations to Plaintiff.

44.     Further, explicitly failing to provide timely and clear notification of the Data Breach to Plaintiff, Defendants prevented Plaintiff from taking meaningful, proactive steps to secure his PII.

45.     There is a close causal connection between Defendant's failure to implement security measures to protect Plaintiff and the harm suffered by Plaintiff. Plaintiff's PII was accessed as the proximate result of Defendants' failure to exercise reasonable care in safeguarding such PII by adopting, implementing and maintaining appropriate security measures.

46.     Defendant's wrongful action, inactions, and omissions constituted (and continue to constitute) common law negligence.

47.     The damages Plaintiff has suffered (as alleged above) and will continue to suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

48.     Additionally, 15 U.S.C.§ 45 (FTC Act, Section 5) prohibits "unfair […] practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect PII.  The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

49.     Defendants violated 15 U.S.C. § 45 by failing to use reasonable measures to protect PII and by not complying with applicable industry standards, as described in

detail herein.  Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff.

50.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered and will continue to suffer injury in addition to the damages described above, including but not limited to:  (i) actual identity theft, (ii) the loss of the opportunity of how his PII is used, (iii) the compromise, publications, and/or theft of his PII, (iv) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft, tax fraud, and/or unauthorized use of his PII, (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spend researching how to prevent, detect, contest, and recover from embarrassment and identity theft, (vi) the continued risk to his PII, which may remain in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff's PII in their continued possession, and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the life of Plaintiff.

51.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered and will continue to suffer other forms of injury and/or harm, including but not limited to anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

52.     Additionally, as a direct and proximate result of Defendants' negligence, Plaintiff has suffered and will continue to suffer the continued risks of exposure of his PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect PII in its continued possession.

## COUNT TWO

## BREACH OF CONFIDENCE

53.      Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

54.     During Plaintiff's interactions with Defendants, Defendants were fully aware of the confidential nature of the PII that Plaintiff provided to them.

55.     As alleged herein and above, Defendants' relationship with Plaintiff was governed by promises and expectations that Plaintiff's PII would be collected, stored, and protected in confidence, and would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released, to, stolen by, used by, and/or viewed by unauthorized third parties.

56.     Plaintiff provided his PII to Defendants with the explicit and implicit understandings that Defendants would protect and not permit the PII to be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

57.     Plaintiff also provided his PII to Defendants with the explicit and implicit understanding that Defendants would take precautions to protect his PII from

unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing, such as following basic principles of protecting their networks and data systems.

58.     Defendants voluntarily received, in confidence, Plaintiff's PII with the understanding that the PII would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by the public or any unauthorized third parties.

59.     Due to Defendants' failure to prevent, detect and avoid the Data Breach from occurring by, *inter alia*, not following best information security practices to secure Plaintiff's PII was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties beyond Plaintiff's confidence and without his express permission.

60.     As a direct and proximate cause of Defendants' actions and/or omissions, Plaintiff has suffered damages, as alleged herein.

61.     But for Defendants' failure to maintain and protect Plaintiff's PII in violation of the parties' understanding of confidence, his PII would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.   The Data Breach was the direct and legal cause of the misuse of Plaintiff's PII and the resulting damages.

62.     The injury and harm Plaintiff suffered and will continue to suffer was the reasonably foreseeable result of Defendants' unauthorized misuse of Plaintiff's PII.

Defendants knew their data systems and protocols for accepting and securing Plaintiff's PII had security and other vulnerabilities that placed Plaintiff's PII in jeopardy.

63.    As a direct and proximate result of Defendants' breaches of confidence, Plaintiff has suffered and will continue to suffer injury, as alleged herein, including but not limited to:  (i) actual identity theft, (ii) the compromise, publication, and/or theft of his PII, (iii) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft and/or unauthorized use of his PII, (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft, (v) the continued risk to his PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff's PII in its continued possession, (vi) future costs in terms of time, effort, and money that will be expended as a result of the Data Breach for the remainder of the life of Plaintiff, (vii) the diminished value of Plaintiff's PII, and (viii) the diminished value of Defendants' services for which Plaintiff paid and received.

## **COUNT THREE**

## **BREACH OF IMPLIED CONTRACT**

64.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

65.     Through their course of conduct, Defendants and Plaintiff entered into implied contracts for Defendants to implement data security adequate to safeguard and protect the privacy of Plaintiff's PII.

66.     Defendants required Plaintiff to provide and entrust his PII as a condition of obtaining Defendants' services.

67.     Defendants solicited and invited Plaintiff to provide his PII as part of Defendants' regular business practices.  Plaintiff accepted Defendants' offers and provided his PII to Defendants.

68.     As a condition of being Defendants' direct client and customer, Plaintiff provided and entrusted his PII to Defendants.  In so doing, Plaintiff entered into implied contracts with Defendants by which Defendants agreed to safeguard and protect such non-public information, to keep such information secure and confidential and to timely and accurately notify Plaintiff if his data had been breached and compromised or stolen.

69.     A meeting of the minds occurred when Plaintiff agreed to, and did, provide his PII to Defendants, in exchange for, amongst other things, the protection of his PII.

70.     Plaintiff fully performed his obligations under the implied contracts with Defendants.

71.     Defendants breached the implied contracts they made with Plaintiff by failing to safeguard and protect Plaintiff's PII and by failing to provide timely and accurate notice to him that his PII was compromised because of the Data Breach.

72.     As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiff has suffered and will continue to suffer:  (i) ongoing, imminent

and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (ii) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (iii) loss of the confidentiality of the stolen confidentiality data, (iv) the illegal sale of the compromised data on the dark web, (v) lost work time, and (vi) other economic and non-economic harm.

## COUNT FOUR

## BREACH OF THE IMPLIED COVENANT

## OF GOOD FAITH AND FAIR DEALING

73.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

74.    Every contract in South Dakota has an implied covenant of good faith and fair dealing.  This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

75.    Plaintiff has complied with and performed all conditions of his contracts with Defendants.

76.    Defendants breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PII, failing to timely and accurately disclose the Data Breach to Plaintiff, and continued acceptance of PII and storage of other personal information after Defendants knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach.

77.    Defendants acted in bad faith and/or with malicious motive in denying Plaintiff the full benefit of the bargain as originally intended by the parties, thereby causing him injury in an amount to be determined at trial.

## COUNT FIVE

## BREACH OF FIDUCIARY DUTY

78.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

79.    In light of the special relationship between Defendants and Plaintiff, whereby Defendants became the guardian of Plaintiff's PII, Defendants became a fiduciary by their undertaking and guardianship of the PII to act primarily for Plaintiff, (i) for the safeguarding of Plaintiff's PII, (ii) to timely notify Plaintiff of a data breach and disclosure, and (iii) to maintain complete and accurate records of what information (and where) Defendants did have and continue to store.

80.    Defendants have a fiduciary duty to act for the benefit of Plaintiff upon matters within the scope of their relationship--in particular, to keep his PII secure.

81.    Defendants breached their fiduciary duties to Plaintiff by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

82.    Defendants breached their fiduciary duties to Plaintiff by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's PII.

83.    Defendants breached their fiduciary duties to Plaintiff by failing to timely notify and/or warn Plaintiff of the Data Breach.

17

84.     Defendants breached their fiduciary duties to Plaintiff by otherwise failing to safeguard Plaintiff's PII.

85.     As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiff has suffered and will continue to suffer injury, including but not limited to:  (i) actual identity theft, (ii) the compromise, publication, and/or theft of his PII, (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of his PII, (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, contest, and recover from identity theft, (v) the continued risk to his PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII in its continued possession, (vi) future costs in terms of time, effort and money that will be expended as a result of the Data Breach for the remainder of the life of Plaintiff, and (vii) the diminished value of Defendants' services he received.

86.     As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff has suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses, as described above.

## COUNT SIX

## UNJUST ENRICHMENT

87.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.  This Count is pled in the alternative to the Breach of Contract Count above.

88.    Upon information and belief, Defendants fund their data-security measures entirely from their general revenue, including payments made by or on behalf of Plaintiff.

89.    As such, a portion of the payments made by or on behalf of Plaintiff is to be used to provide a reasonable level of data security, and the amount of each payment allocated to data security is known to Defendants.

90.    Plaintiff conferred a monetary benefit to Defendants.  Specifically, he purchased goods and services from  Defendants and/or their agents and provided Defendants with his PII.  In exchange, Plaintiff should have received from Defendants the goods and services that were the subject of the transaction and have his PII protected with adequate data security.

91.    Defendants knew that Plaintiff conferred a benefit which Defendants accepted.  Defendants profited from these transactions and used the PII of Plaintiff for business purposes.

92.    Defendants enriched themselves by saving the costs it reasonably should have expended in data-security measures to secure Plaintiff's PII.  Instead of providing a reasonable level of security that would have prevented the bribery/infiltration incident, Defendants instead calculated to increase their own profits at the expense of Plaintiff by

19

utilizing cheaper, ineffective security measures. On the other hand, Plaintiff suffered as a direct and proximate result of Defendants' decision to prioritize its profits over the requisite security.

93.     Under the principles of equity and good conscience, Defendants should not be permitted to retain the money belonging to Plaintiff, because Defendants failed to implement appropriate data management and security measures mandated by industry standards.

94.     Defendants failed to secure Plaintiff's PII and, therefore, did not provide full compensation for the benefit of Plaintiff.

95.     Defendants acquired the PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

96.     If Plaintiff knew that Defendants had not reasonably secured his PII, he would not have agreed to provide his PII to Defendants.

97.     Plaintiff has no remedy at law.

98.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer injury in addition to loss of his cryptocurrency assets, including but not limited to: (i) actual identity theft, (ii) the loss of opportunity to determine how his PII is used, (iii) the compromise, publication, and/or theft of his PII, (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of his PII, (v) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts

spent researching how to prevent, detect, contest, and recover from identity theft, (vi) the continued risk to his PII, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect PII in its continued possession, and (vii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the life of Plaintiff.

99.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer other forms of injury and/or harm.

## COUNT SEVEN

## FRAUD AND PUNITIVE DAMAGES

100.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.  This Count is pled in the alternative to the Breach of Contract Count above.

101.    If and to the extent that the fraud upon Plaintiff was accomplished by Defendants' own employees, Defendants are liable for such fraud.

102.    The misconduct described above was fraudulent and malicious, and Plaintiff is entitled to recover punitive damages in addition to actual damages, the amount to be determined by the trier of fact, but not less than $10,000,000.

## RELIEF SOUGHT

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, and for the following specific relief:

1.    For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined, in the form of the actual Ethereum stolen, but not less than $400,000 plus accrued interest;

2.    For punitive damages in an amount to be determined by the trier of fact, but not less than $10,000,000;

3.    That the Court enjoin Defendants, ordering them to cease and desist from similar unlawful activities;

4.    For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff;

5.    For injunctive relief requested by Plaintiff, including but not limited to injunctive and other equitable relief as is necessary to protect the interests of Plaintiff, including but not limited to an Order:

    (a)    prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

    (b)    requiring Defendants to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards and federal, state or local laws;

22

(c)    requiring Defendants to delete and purge Plaintiff's PII unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff;

(d)    requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff's PII;

(e)    requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacked, penetration tests, and audits on Defendants' systems on a period basis;

(f)    prohibiting Defendants from maintaining Plaintiff's PII on a cloud-based database;

(g)    requiring Defendants to segment data by creating firewalls and access controls so that, if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

(h)    requiring Defendants to conduct regular database scanning and security checks;

(i)    requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PI, as well as protecting the PI of Plaintiff;

(j)    requiring Defendants to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding

subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs and systems for protecting personal identifying information;

(k)    requiring Defendants to implement, maintain, review and revise as necessary a threat management program to monitor Defendants' networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested and updated;

(l)    requiring Defendants to meaningfully educate Plaintiff about the threats he faces as a result of the loss of his confidential PII to third parties, as well as the steps he must take to protect himself.

6.    For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

8.    For such other relief deemed by the Court as just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

CADWELL SANFORD DEIBERT
& GARRY LLP

Dated:  October 3, 2025

By  _/s/ *SW Sanford*_____
Steven W. Sanford
200 E. 10th Street, Suite 200
Sioux Falls, South Dakota 57104
(605) 336-0828
E-mail: *ssanford@cadlaw.com*
***Attorneys for Plaintiff***

JS 44   (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JOSE TEIXEIRA

### DEFENDANTS
COINBASE GLOBAL, INC. and COINBASE, INC.

**(b)** County of Residence of First Listed Plaintiff   Pennington
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
            THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Steven W. Sanford, Cadwell Sanford Deibert & Garry
LLP, 200 E 10th Street, #200, Sioux Falls, SD 57104

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government
        Plaintiff
- [ ] 2   U.S. Government
        Defendant
- [ ] 3   Federal Question
        *(U.S. Government Not a Party)*
- [x] 4   Diversity
        *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|                                 | PTF | DEF |                                                          | PTF | DEF |
|---------------------------------|-----|-----|----------------------------------------------------------|-----|-----|
| Citizen of This State           | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State        | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| | | | | [ ] 862 Black Lung (923) | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [x] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | [ ] 871 IRS—Third Party 26 USC 7609 | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
fraud, theft of cryptocurrency account money

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
$400,000 & punitive da

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
10/03/2025

SIGNATURE OF ATTORNEY OF RECORD
Steven W. Sanford

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____